Ex Parte John Bayless, Petitioner.—110 S. W. (2d) 724.

Court en Banc, December 9, 1937.

*A. B. Lovan* and *Phil M. Donnelly* for petitioner.

*Roy McKittrick*, Attorney General, and *Russell C. Stone*, Assistant Attorney General, for respondent; *James L. HornBostel* of counsel.

GANTT, J.—*Habeas corpus.* Petitioner seeks release from the penitentiary. In 1935 there occurred the following:

At ten-thirty P. M. on April 8th, James McCraw was killed at his farm ten miles east of Springfield, Missouri. He heard a noise and went to the barn. He there shot a chicken thief. In turn, the chicken thief shot him. He died in a few hours. At ten P. M. on April 10th, petitioner and his wife were arrested and confined in jail. At six A. M. April 11th, Marvin Bennett was arrested and taken to jail. He had been shot in the face. Informations were filed against petitioner and Bennett, charging them with the murder of McCraw. On May 16th, Bennett pleaded guilty. Petitioner pleaded not guilty at his trial, commencing on May 30th, ended June 2d. At the trial, Bennett testified that he and petitioner drove to the McCraw farm on the night of the murder to steal chickens; that petitioner remained in the car while he went to the barn; that at or near the barn McCraw shot him in the face and neck; that he then shot and killed McCraw. There were other facts and circumstances in evidence tending to corroborate the testimony of Bennett that petitioner was with him. The jury found petitioner guilty and fixed his punishment at ten years in the penitentiary. He did not file a

motion for a new trial and did not appeal. He was sentenced on the verdict. Thereafter Bennett was sentenced to serve a life term in the penitentiary. Petitioner was confined in the penitentiary June 16th, and in a few days Bennett was confined therein.

Petitioner contends that at no time was he on the McCraw farm; that Bennett was guilty of perjury in testifying that he was with him at the time of the murder; that the prosecuting attorney and sheriff knew that Bennett was testifying falsely when he stated that petitioner was with him at said time; that the only direct evidence tending to show that he was with Bennett at said time was the testimony of Bennett, and that, absent said testimony, there was no substantial evidence authorizing the verdict. For said reasons petitioner argues that he was denied due process under the State and Federal Constitutions. [Mooney v. Holohan, 294 U. S. 103.]

On the question, petitioner, his wife and seven inmates of the penitentiary, testified for petitioner.

In substance, petitioner testified as follows: Bennett arrived at the jail with officers about daylight. He heard every word they said to Bennett. They charged him with the murder of McCraw. He denied the charge. They inquired about the wounds on his face and neck. He did not explain. They hit him three times with a hose and continued to question him. Finally he admitted that he was at the farm the night of the murder. They inquired if petitioner was with him, and he answered no. They told him that a big crowd was waiting outside to mob him, and inquired if he wanted to be taken out of town. He answered yes. At that time an officer opened the door to petitioner's cell and led him into the room. The officer said: "We have Bennett here." Petitioner answered that he saw him. They said Bennett admitted that he had been at the farm that night and said they would take him out of town. They inquired if petitioner wanted to be taken out of town. Petitioner told them he had done nothing and did not want to leave town. Bennett then said that petitioner had not been with him. A number of officers were there, but petitioner did not remember seeing the prosecuting attorney.

In substance, Mrs. John Bayless testified as follows: About daylight on April 11th, the officers arrived at the jail with Bennett. She noticed a bandage on his neck. He inquired of the officers why petitioner, his wife and stepson were in jail. He stated that they were not with him. He continued to tell the officers that petitioner was not with him. The officers told him they would hang him if he did not say that petitioner was with him. The prosecuting attorney struck Bennett once or twice that morning. The sheriff and other officers continuously beat him. He "hollered" while they were doing so. After reviving him they again beat him. He said he was shot at a dance and denied killing McCraw.

In substance, seven inmates of the penitentiary testified as follows: For some time after Bennett's arrival at the penitentiary he told the inmates that Ed Compton, and not petitioner, was with him on the night of the murder. He stated that he so told the prosecuting attorney. He also stated that he had to testify against petitioner because the prosecuting attorney told him if he did not so testify he would be hanged on his plea of guilty. He stated that just prior to the hearing before the Governor on petitioner's application for a pardon, the prosecuting attorney and sheriff came to the penitentiary and told him if he did not stand by his testimony at the trial of petitioner, it would be hard for him to get a parole. Bennett was not in good standing with the inmates because he had testified against petitioner.

In substance, the affidavit of Bennett, for use on petitioner's application for a pardon, follows: Bennett, upon his oath, states that at the time of his arrest he was told by the prosecuting attorney that if he would tell who was with him he would be sentenced to the penitentiary; otherwise, he would be sentenced to hang; that he so believed and told the prosecuting attorney that petitioner was with him, thinking petitioner would be able to prove his innocence; that Compton, and not petitioner, was with him at the McCraw farm, and that Compton killed McCraw.

At the hearing for a pardon, Bennett stated that both petitioner and Compton were with him at the McCraw farm the night of the murder.

In substance, the testimony of the officers follows: On the murder of McCraw the night of April 8th, the police of Springfield and deputy sheriffs of Greene County "rounded up" and confined in jail all "known chicken thieves." The prosecuting attorney was not active until he returned from Jefferson City on the night of April 10th. He then went to the jail and with other officers drove twelve miles east of Springfield to a resort owned by Mrs. Schneider. They were seeking information about Bennett. She said Bennett and another man had been there the night of the murder. Later she identified petitioner as the other man. On returning to the jail, the prosecuting attorney and officers went to the McKerall farm. They did not locate Bennett. On again returning to the jail, the prosecuting attorney was immediately driven to his home. Thereafter and at daylight Bennett was arrested and taken to jail. At that time the sheriff was preparing to leave for Jefferson City with other officers on important official business. Bennett stated to the sheriff that he was shot at the McCraw farm. The sheriff did not think Bennett should be confined in the jail at Springfield. He telephoned the prosecuting attorney that Bennett was at the jail. He told him that Bennett should be elsewhere confined and inquired if he would ac-

company the officers and Bennett to another county jail. The prosecuting attorney said that he would do so. The officers, with Bennett, then drove to the home of the prosecuting attorney, who accompanied them to the Carthage jail, where Bennett was confined. Bennett was not confined in the Springfield jail that morning and was there only ten or fifteen minutes. On the way to Carthage the prosecuting attorney did not question him. However, Bennett did some talking to other officers. In a few days he was removed from the Carthage jail to Springfield and taken by the sheriff to the offices of the prosecuting attorney. The prosecuting attorney was in conference and, while waiting, the sheriff told Bennett of certain information Mrs. Bennett had given the officers. Bennett then told the sheriff about the murder and stated that petitioner was with him. On the prosecuting attorney and chief of police entering the room, Bennett also told them about the murder and stated that petitioner was with him. The prosecuting attorney, sheriff and chief of police denied that they, on that occasion or at any other time, threatened to hang Bennett if he did not testify that petitioner was with him at the time McCraw was murdered.

It will be sufficient to state that all of the officers, including the sheriff's wife, son and daughter, who were at the Springfield jail when Bennett arrived, testified that Bennett was at said jail that morning only ten or fifteen minutes. They also testified that neither at that time nor at any other time was Bennett abused, threatened, mistreated or struck with a hose or anything else. They also testified that while Bennett was at the jail that morning, the prosecuting attorney was at his home.

Thus it appears that the only direct evidence for petitioner is the testimony of petitioner and his wife. The statements of Bennett to the inmates and his affidavit were efforts on his part to improve his standing in the penitentiary. He had testified against a defendant charged as an accomplice. Furthermore, the evidence is conclusive that the prosecuting attorney was not at the jail on the morning of April 11th. Therefore, he could not, as testified by Mrs. Bayless, have struck Bennett with a hose and stated that he would be hanged if he did not testify that petitioner was with him. Furthermore, in view of the facts and circumstances in evidence, the testimony of petitioner is unbelievable.

There is no credible evidence tending to show that Bennett was guilty of perjury in testifying at the trial that petitioner was with him, and there is no credible evidence tending to show that either the prosecuting attorney or the sheriff knew or had reason to believe that Bennett was guilty of perjury in so testifying.

The petitioner should be remanded to the custody of J. M. Sanders, warden of the penitentiary. It is so ordered. All concur, except *Hays, C. J.,* and *Douglas, J.,* absent.